FILED
FEB 6 2006
JUDGE HARRY D. LEINENWEBER
U.S. DISTRICT COURT JUDGE

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

KEVIN VRBA,

Plaintiff,

v.

THE FLOOD COMPANY,

Defendant.

Case No. 04 C 6782

Hon. Harry D. Leinenweber

## MEMORANDUM OPINION AND ORDER

Plaintiff Kevin Vrba (hereinafter, "Plaintiff") brings this product liability action against Defendant The Flood Company (hereinafter, "Flood") for injuries resulting from slipping and falling off his roof while applying an oil-based wood sealant manufactured by Flood. Specifically, Plaintiff bases his strict liability claim on Flood's purported failure to warn consumers of a hazardous condition (*i.e.*, the slippery nature of the sealant) and on an unreasonably dangerous design defect in the sealant stemming from the same condition. Before the Court is Flood's Motion for Summary Judgment. For the reasons stated below, Flood's motion is **granted**.

### I. FACTUAL BACKGROUND

The following facts are taken from the parties' statements of uncontested facts and are not in dispute. On June 13, 2002, at around 7:00 p.m., Plaintiff was applying Flood's CWF-UV Penetrating Oil Finish for Exterior Wood ("CWF-UV" or "Sealant") to the cedar-

shingle roof of his home by means of an electric sprayer. Plaintiff had been on the roof on previous occasions, and was aware that the roof was slanted and suspended ten to twelve feet above ground. While applying the Sealant to the roof, Plaintiff accidentally stepped onto a freshly-sprayed wet spot, causing his foot to slip out from under him. Consequently, Plaintiff lost his balance and slid down the roof, momentarily grabbing onto the gutter before falling to the ground and breaking both of his heels. Plaintiff purchased the Sealant used for his roof project in a five-gallon container from a local home improvement store. The label on the container specifically noted that the Sealant could be used on roofs. It also included various warnings, most of which pertained to dangers relating to inhalation and exposure. In addition, under a separate heading titled "Good Application Practice," the label instructed, "Note: Stained surfaces may become slippery when wet. Use Caution when walking on surfaces when moisture is present." Plaintiff remembered reading the portion of the label that stated the product could be used on roofs because it prompted him to buy it for his roof project, but he could not specifically recall reading any information related to any warnings.

As his deposition testimony indicates, Plaintiff was familiar with the Sealant, having used in on numerous occasions in the past to seal decks. Although he was aware that he needed to exercise

caution when working on the roof, at the time of the accident Plaintiff was not wearing any safety harness or other safety equipment except for rubber-soled shoes. Plaintiff also knew that the Sealant, once applied, could create a slippery condition. Consequently, as a precautionary measure, he utilized the sprayer in such a way as to minimize excess runoff of the Sealant. As a further precaution, Plaintiff intended to step only on dry areas that had not been sprayed. However, he unintentionally stepped onto a wet spot, which led to his fall and subsequent injury.

## II.  **LEGAL STANDARD**

Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). A fact is "material" if it could affect the outcome of the suit under the governing law; a dispute is "genuine" where the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The burden is initially upon the movant to demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In assessing the movant's claim, the court must view all the evidence and any reasonable inferences that may be drawn from that evidence in the light most favorable to the non-

movant. *Miller v. Am. Family Mut. Ins. Co.*, 203 F.3d 997, 1003 (7th Cir. 2000).

## III. DISCUSSION

Plaintiff's complaint contains a single-count strict liability claim, which requires him to demonstrate that his injuries resulted from an unreasonably dangerous or defective condition of the product, and that the condition existed at the time the product left the manufacturer's control. *McColgan v. Environmental Control Systems*, 571 N.E.2d 815, 817 (Ill. App. Ct. 1991). A product may be unreasonably dangerous if there is a design defect with the product or if there is a failure to warn adequately of a danger posed by the product to which the average consumer would not be aware. *Id.* Plaintiff has alleged that Flood is liable under both theories because it failed to provide adequate warning of the Sealant's slippery nature, and that the propensity of the Sealant to create a slippery condition is itself a design defect.

### A. Adequacy of Warnings

Plaintiff alleges that the Sealant is unreasonably dangerous because the label did not contain adequate warnings regarding the slippery nature of the product, particularly when used on slanted roofs. In response, Defendant asserts that the oil-based sealant when applied to any surface creates an open and obvious risk of which the Plaintiff was aware. Flood also contends that any inadequacies in the warnings label are immaterial because Plaintiff

never read the label, and thus his injuries could not have been prevented in the first instance.

Product warnings are designed to inform a person of a danger of which he is not aware, but where such danger is obvious, no benefit is gained from the warning. *Hornyak v. Nat'l Presto Indus.*, No. 94 C 2193, 1995 U.S. Dist. LEXIS 5360, *13 (N.D. Ill. April 20, 1995)(citing *Collins v. Sunnyside Corp.*, 496 N.E.2d 1155, 1157 (Ill. App. Ct. 1986)). Thus, there is no duty to warn where the possibility of injury results from a common propensity of the product which is open and obvious. *Id.* at *7; *see also Mason v. Ashland Exploration*, 965 F.2d 1421, 1429 (7th Cir. 1002). The determination of whether a risk is open and obvious is based an objective ordinary person standard. *Spurgeon v. Julius Blum, Inc.*, 816 F. Supp. 1317, 1323 (C.D. Ill. 1993). "Where the risk of injury is of injury is open and obvious as a matter of common knowledge and perception, the product cannot be deemed unreasonably dangerous or defective." *Id.* (quoting *Smith v. American Motor Sales Corp.*, 576 N.E.2d 146, 150 (Ill. App. Ct. 1991)). As such, "injuries are not compensable . . . if they are caused by those inherent properties of a product which are obvious to all who come into contact with them." *Id.*

Here, Plaintiff cannot prevail on a failure to warn theory as a matter of law because the hazards of working with an oil-based wood sealant on a slanted roof are open and obvious. Certainly, a

person with ordinary knowledge and experience would appreciate that an oil-based sealant has the propensity to create a slippery condition on any surface. But the dangers inherent in working with such a product on a slanted roof are even more readily apparent. *See Hornyak*, 1995 U.S. Dist. LEXIS, 5360, at *8 (noting that risks associated with grasping a deep fryer by its aluminum handle without allowing the hot oil to cool are open and obvious).

Plaintiff also had prior experience with the Sealant, having used it several times in the past on wood decks, and was aware of its slippery nature. (*See* Pl. Resp. Mem. at 4 ("Plaintiff knew that the product was slippery but never had a problem with (slipping) *[sic]* prior to his fall from the roof.").) Moreover, as his deposition testimony indicates, Plaintiff was also specifically aware of the increased danger of applying the Sealant to a slanted roof, where the possibility of slipping was heightened:

> Q:    While you were up on the roof that day, were you careful to try not to step onto the wet parts of the roof where you had just applied the product?
>
> A:    Yeah, I mean, that's-
>
> Q:    And why is that?
>
> A:    It's wet.  You're on an angle.  It's steep. You know, you probably don't want to - it's slippery.
>
>                  .  .  .
>
> Q:    Were you surprised that it was slippery?
>
> A:    No.

Q:    You already told me that you knew that it was
      slippery, right?

A:    Yes.

(Def. Mem., Exh. B at 134:12-20, 1184:14-18.)    Plaintiff also

testified that he tried to avoid stepping on freshly sprayed spots

because he knew those areas would be slippery.    (*Id.* at 142:22-

143:7.)

In short, the risk of injury stemming from slipping and

falling off of a roof while using an oil-based sealant is open and

obvious to the ordinary consumer.    Accordingly, Flood cannot be

held strictly liable for failure to provide adequate warnings on

the Sealant label.

## B. Defective Design

In his response brief, Plaintiff does not attempt to justify

the basis for his design defect theory of liability.    Rather, he

simply urges that regardless of whether the Court finds that the

risk was open and obvious, the Sealant may still qualify as

defective under a "risk/benefit" test.    Under this test, a product

will be considered unreasonably dangerous if the evidence

establishes that it "could have been designed to prevent the

foreseeable harm without hindering its function or increasing its

price."    *Palmer v. Avco Distributing Corp.*, 412 N.E.2d 959, 964

(Ill. App. Ct. 1980).    Yet, Plaintiff does not endeavor to explain

what cost-effective safeguards Flood reasonably could have

implemented that would reduce the propensity of injury from a slip and fall.

More importantly, however, the risk/benefit test does not apply where the danger of a product is obvious and the mechanics involved are simple. *Todd v. Societe Bic, S.A.*, 21 F.3d 1402, 1406 (7th Cir. 1994); *Hornyak*, 1995 U.S. Dist. LEXIS 5360, at *13. Such is the case here. The application of an oil-based sealant to a roof (or any other surface) carries with it the obvious potential for creating a slippery condition, as Plaintiff himself acknowledges he was aware. As explained above, the inherent risk of slipping and falling while working on such a surface is a matter of common knowledge and is readily observable.

Therefore, based on the simple mechanics of the injury involved in this case and the obviousness of the danger, Plaintiff cannot prevail on a risk/utility theory for his strict liability claim as a matter of law.

## IV. CONCLUSION

For the reasons set forth herein, Defendant The Flood Company's Motion for Summary Judgment is **GRANTED**.

**IT IS SO ORDERED.**

Harry D. Leinenweber, Judge
United States District Court

Dated: *February 6, 2006*